**STATE ex MOFFITT, Relator v ZUPNIK et, Respondents.**

Ohio Appeals, 8th District, Cuyahoga County.

No. 18897.  Decided March 15, 1943.

Griswold, Leeper, Miller & Corry, Cleveland, for plaintiff-relator.

Thomas A. Burke, Jr., director of law, and Charles W. White, asst. director of law, Cleveland, for defendants-respondents.

## OPINION

By SKEEL, J.

This case is one in mandamus seeking an order directing the Trustees of the Cleveland Police Relief Fund to grant the relator a pension based upon the salary he was receiving on the day of his retirement from duty as a police officer of the city of Cleveland. The facts are not in dispute.

The plaintiff became a member of the police department of Cleveland on April 1, 1913, was advanced to the rank of Sergeant on May 1, 1918, and of Lieutenant of Police on September 16, 1921.

On January 1, 1932, by order of the Chief of Police a Bureau of Arms was created and Lieutenant Moffitt was detailed to work in the Bureau.

The city council, on February 17, 1932, thereupon amended Section 186 of the Municipal Code by adding Section 186-1 which provided for the creation of a Bureau of Arms within the Division of Police in the Department of Safety to be administered by a Superintendent of Arms under the direction of the Chief of Police. Such Superintendent of Arms was by the amendment required to be a member of the police department.

The relator continued on the detail as Superintendent of the Bureau of Arms, receiving the salary of a Lieutenant of Police until April, 1935, when he was detailed as Lieutenant of Detectives as provided by Section 304 of the Municipal Code and from that date until his retirement he was paid at the rate of $3543.36 per year. This detail was effected only for the purpose of granting the relator the additional pay that was provided by ordinance for a Lieutenant of Police detailed to the Detective Bureau but he continued insofar

as his duties were concerned as Superintendent of the Bureau of Arms.

On November 23, 1938, Section 142 of the City Charter was amended to this effect that any city employee employed continuously "in the same position for the five years preceding the adoption of this section, shall retain this position until discharged, promoted .* * * in accordance with the provisions of this charter." The amendment further provided that persons in the classified services claiming a classified status as above set forth "must file application for such status with the Civil Service Commission after the adoption of this provision * * * ."

The relator, seeking to have his classification fixed under this amendment of the charter, filed application therefor with the Civil Service Commission on June 29th. On July 12, 1939, the Commission notified the relator that his request had been granted and thereafter he continued as Superintendent of the Bureau of Arms and for which he received the same compensation.

The city council thereafter, on May 13. 1940, amended Section 304 of the Municipal Code which section provides for the rates of compensation for the members of the Police Department of the city by including therein the compensation to be paid the Superintendent of the Bureau of Arms. The rate of pay was provided for in the sum of $3543.36 per year which was the same rate the relator had been receiving since April, 1935.

The relator retired from the police force February 21, 1942.

It is conceded that he is entitled to a pension as provided for by Rule 21 of the Board of Trustees of the Police Relief Fund. The only issue is as to whether or not the amount of his pension should be based upon the salary he was receiving on the date of his retirement or what the rate would have been as a Lieutenant of Police which was the rank he held when assigned to the Bureau of Arms.

Rule 21 insofar as applicable to the question, reads as follows:

"Any member of the Division of Police who has served for a period of twenty-five (25) years * * * may voluntarily retire * * * and shall be placed upon the Police Relief Roll at a rate of pension equal to fifty per cent (50%) of the salary for the rank the member held at the time of retirement * * * ."

"Upon the retirement of a member of the Division of Police who shall have actually served ten years in a position to which detailed and for which he is paid a higher salary than that fixed for the position from which detailed * * * then upon retirement his relief compensation shall be based on the salary received in the position to which detailed at the time of such retirement."

It is the claim of the respondents that the designation "rank" as used in the first paragraph of Rule 21, when applied to the facts applicable to the relator, means the relative standing among the officers and men of the police department in terms of the traditional

titles used to designate the standing of the members of the department, such as patrolman, sergeant, captain, inspector and chief. The meaning of the term as defined in Webster's Dictionary is "grade of official standing." Therefore, when the word is used with regard to the personnel of a department of the city it must have been used to describe every "grade" or position provided for by ordinance in the department. Giving the word "rank" as used in the first paragraph of Rule 21 its ordinary and usual meaning, we find that it was intended to include each grade or position provided for by ordinance to make up the personnel of the department. This would include Superintendent of Arms, which rank or position was created by ordinance in February, 1932, and the rate of compensation for such rank was provided for by ordinance on May 13, 1940.

This conclusion is inescapable when the whole of Rule 21 is considered. In the second paragraph the word "position" is used in such way as to show that Council intended to be understood to carry the same meaning as the word "rank."

The Board of Trustees have on a number of other occasions placed this interpretation upon the meaning of the first paragraph of Rule 21, notably in the case of the retirement of the Superintendent of Signal System and Superintendent of Criminal Investigation where a pension was granted at a rate equal to one-half of the salary of the position to which they were detailed and not one-half of the salary of the rank from which they were detailed.

We hold, therefore, that the relator at the time of his retirement held the rank of Superintendent of Arms and that the salary therefor was $3543.36 per year and by the rules of the Trustees of the Police Relief Fund he would be entitled to an annual pension of $1771.68.

Relator further claims that upon the undisputed facts as disclosed by the record he would be entitled to a pension based on the income he was receiving as Superintendent of Arms at the time of his retirement because he had been detailed to that position for more than ten years next preceding the date he thus retired.

The second part of Rule 21, supra, provides that where an officer has actually served ten years in a position to which detailed and for which he is paid a higher salary than that fixed for the position from which detailed, then upon retirement his relief compensation shall be based upon the salary being received in the position to which detailed at the time of his retirement. The relator was detailed to the position of Superintendent of Arms on January 1, 1932. From that date until his retirement he continued to act in the same capacity. He was for more than ten years therefore continuously detailed to perform the duties of the Superintendent of Arms.

The respondents contended that such detail came to an end when relator took advantage of the provisions of Section 142 supra, of the charter of the city of Cleveland. The effect, however, of the relator's application to have his status as Superintendent of Arms

fixed was simply to continue his detail in that service "until discharged, reduced, promoted or transferred in accordance with the provisions of this chapter."

In granting his application fixing his status under Section 142 supra, the Civil Service Commission did not, therefore, appoint him to the position of Superintendent of Arms. It simply recognized his right to continue upon the detail to that position as provided by the amendment (Section 142) to the city charter.

The relator having been continuously employed in the detail of Superintendent of Arms for more than ten years, was, upon retirement, entitled to a pension based on the salary he was receiving at the time of his retirement, which salary was $3542.36 per year.

One other question is presented for our consideration and that is the claim of the relator that the trustees of the relief fund are estopped from denying his claim to a pension based upon his salary at the time of his retirement.

Such contention however cannot be supported. The governing board of the Police Relief Fund is a public body functioning only by reason of the powers vested in it by the charter and ordinances of the city of Cleveland, and the rules of the Board adopted under the charter and ordinances. Powers thus derived cannot be enlarged and extended by the doctrine of estoppel. If, therefore, the relator would not have been entitled to the relief prayed for under the charter and ordinances of the city of Cleveland, and the rules of the Board the conduct of the Board of the Police Relief Fund nor any other public official could not enlarge his right to benefits thereunder.

For the reasons thus stated we conclude that the relator is entitled to a pension equal to one-half the salary he was receiving at the time of his retirement.

A decree for relator is therefore ordered. O. S. J.

MORGAN, P. J., and LIEGHLEY, J., concur.